UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                  :

LAMARR REMBERT,                     :        16-cv-5586 (ARR) (CLP)
Plaintiff                          :

                                     :        __NOT FOR PRINT OR__
    -against-                    :        __ELECTRONIC__
                                       :        __PUBLICATION__

THE CITY OF NEW YORK *et al*       :
Defendants.                    :        __OPINION & ORDER__
                                       :

------------------------------------------------------------------ X

ROSS, United States District Judge:

Plaintiff Lamarr Rembert bring this civil rights action under 42 U.S.C. § 1983 and New York state common law against Police Officer Thomas Rivera. Mr. Rembert alleges that while he was in Officer Rivera's custody, he was assaulted by an emergency medical technician ("EMT") on an ambulance, and Officer Rivera did not intervene. Officer Rivera moves for summary judgment, seeking dismissal of all of plaintiffs' claims against him. For the reasons explained below, defendant's motion is denied.

## BACKGROUND

Mr. Rembert was arrested on May 12, 2016.[1] *See* Def. Resp. Pl. 56.1 ¶ 1, ECF No. 74.[2] After the arrest, officers took Mr. Rembert to a holding cell at the 84th precinct. *See* Def. Resp. Pl.

---

[1] Plaintiff alleges that an unidentified police officer struck him in the chest with a gun during the arrest. Def.'s Resp. to Pl.'s Rule 56.1 Statement ¶ 2 ("Def. Resp. Pl. 56.1"), ECF No. 74. However, he has withdrawn all legal claims based on this alleged assault. *See* Pl.'s Pre-Mot. Letter 1, ECF No. 56.

[2] Defendants are correct that plaintiff failed to properly comply with E.D.N.Y. Local Civil Rule 56.1. Def.'s Reply Mem. of Law in Further Supp. of Def.'s Mot. for Summ. J. 1–2, ECF No. 75 ("Def.'s Reply"); *see* Pl.'s Rule 56.1 Statement, ECF No. 73 (failing to provide complete citations or to respond to defendants' statement). However, plaintiff's improper response does not require the court to deem defendants' statement of facts as admitted, and I decline to do so. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]hile a court 'is not required to consider what the parties fail to point out' in their Local Rule 56.1 statements, it may in its

56.1 ¶ 2. Mr. Rembert was screaming and kicking the gate of the cell. *Id.* Officers called an ambulance. *See id.* Mr. Rembert was escorted to the ambulance in handcuffs and leg shackles. *Id.* ¶ 3. The parties offer differing accounts of what occurred inside the ambulance. Mr. Rembert himself has provided contradicting accounts of the events. The parties agree that Mr. Rembert was handcuffed behind his back and shackled at the legs throughout the ambulance ride from the 84th Precinct to Woodhull Hospital, and that Officer Rivera was near the ambulance during the alleged incident, and at some point entered the ambulance. *Id.* ¶¶ 3–12.

At the 50-H hearing, Mr. Rembert described that the EMT instructed him to lie down in the ambulance, but he refused to do so because his cuffs were too tight. Rembert 50-H Tr. 22:3–15, ECF No. 72-3. Mr. Rembert testified that a police officer standing at the back of the ambulance stated, "Be careful with this guy because he deals with internal affairs." *Id.* 22:15–25. He further testified, "I had cursed, and I guess my spit touched the EMS guy[.]" *Id.* 23:2–4. He stated that, in response, "[the EMT] [p]unched me in my face numerous times, slammed me on the gurney, put a sheet around my neck – my head, put his knee on my head, and kept pounding on me." *Id.* 23:5–10. Somebody told the EMT to stop, and he stated "I don't give a fuck about [a] camera in here. . . . He shouldn't have spit on me." *Id.* 23:10–14. Mr. Rembert estimated that the EMT struck him fifteen times, which caused him to lose consciousness. *See id.* 23:15–19. Mr. Rembert was bleeding from his mouth, and the EMT wrapped a sheet around his head and held his knee down on him, while Mr. Rembert was telling him, "I can't breathe." *Id.* 23:21–24:5. Mr. Rembert testified that the police officer at the back of the ambulance saw the assault. *Id.* 34:8–11.

---

discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file such a statement" (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000).).

At his deposition for this case, Mr. Rembert testified similarly that he was instructed to lie down and refused, and that he cursed at the EMT and may have inadvertently spit on him. *See* Rembert Dep. 79:2–25, ECF No. 68-3. But Mr. Rembert provided some different details of the assault, specifically that the EMT punched him once in the left side of his face, and kneed him once in the left side of his head. *Id.* 80:15–82:5. He stated he lost consciousness from the attack. *Id.* 81:15–19. He stated the EMT held his knee on him for the rest of the ambulance ride, and wrapped his face in a white sheet. *Id.* 82:7–23. He stated the punch caused his lip to bleed and a fracture in his eye. *Id.* 82:24–83:2. He stated the incident happened "real quick," within "seconds." *Id.* 83:3–16. Mr. Rembert testified that while this occurred, there was a police officer who "stood right there" and told the EMT to stop. *Id.* 80:21–23; 83:17–25.

Officer Rivera testified that he was standing about 10 feet away when Mr. Rembert entered the rear of the ambulance. Rivera Dep. 47:15–18, ECF No. 68-4. At first, Officer Rivera stayed outside of the ambulance. *Id.* 48:2–4. The rear door was open, and he was able to see Mr. Rembert inside. *Id.* 48:5–11. Officer Rivera was filling out a prisoner medical treatment form. *Id.* 48:19–24. Officer Rivera stated he heard a "commotion" coming from inside the ambulance, which sounded "like an argument with the EMT." *Id.* 56:2–23. He quickly ran into the ambulance upon hearing this commotion. *Id.* 60:16–19. Mr. Rembert was "very irate, yelling, screaming." *Id.* 60:22–23. Officer Rivera testified that he did not see the EMT kick, knee or "do anything to the Plaintiff other than hold the blanket over his head to stop him from spitting." *Id.* 85:3–19.

The EMT, Brandon Lamboy, testified that Mr. Rembert was cursing as he entered the ambulance. Lamboy Tr. 80:10–81:2, ECF No. 72-2. Mr. Lamboy stated that he assisted Mr. Rembert into the ambulance with the help of an officer. *Id.* 81:16–25. Mr. Rembert refused to lie down on the stretcher, and Mr. Lamboy and the ESU officer "placed him on the stretcher." *Id.*

90:3–19. According to Mr. Lamboy, he grabbed Mr. Rembert's arms, and the ESU officer grabbed his feet, and together they "guided him onto the stretcher." *Id.* 90:20–24. They placed him in a "semi fowlers" position, which is "sitting up with his feet straight." *Id.* 91:2–5. Mr. Rembert did not physically resist, but he started yelling and cursing, and then spit in Mr. Lamboy's face. *Id.* 91:16–92:5. Mr. Lamboy testified, "I put both of my hands on, I guess, his shoulder and I placed him down. This way he would not be able to get up and attack." *Id.* 96:17–23. Mr. Rembert began kicking his feet and trying to move his arms. *Id.* 98:2–3. Two officers entered the vehicle, and assisted with restraining Mr. Rembert using a Velcro strap. *Id.* 99:16–24.

On May 14, 2016, after being released from police custody, Mr. Rembert went to Brooklyn Hospital. Deutsch Examination & Expert Witness R. 4, ECF No. 72-5. He had red eyes in both eyes and a laceration to the lips. *Id.* He had a CT scan, which found "mild left facial edema" and "fracture of the left lamina papyracea with thickening/edema of the left medical rectus muscle." *Id.* at 5. On July 24, 2018, Dr. James A. Deutsch examined Mr. Rembert. *Id.* at 6. At that time, Mr. Rembert was complaining of persistent drooping of the left upper eyelid and mild blurred version in his left eye. *Id.* The examination "was significant for 3mm of ptosis (drooping eye lid) in the left eye" and "a stromal scar in the inferotemporal cornea in the left eye." *Id.* 6–7. Dr. Deutsch stated these injuries may have been caused or worsened by the assault Mr. Rembert had described. *Id.* at 7. Dr. Deutsch further stated that "the most likely cause" of the type of fracture diagnosed at Brooklyn Hospital was "direct force delivered by a fist o[r] other hard object to the eye and orbit of the individual." *Id.* at 8. Dr. Deutsch also noted that the eyelid drooping may require surgical repair. *Id.*

Mr. Rembert initially filed suit on October 20, 2016, bringing several § 1983 and state law causes of actions. Plaintiff has since withdrawn or settled many claims previously asserted. The

parties stipulated to the dismissal of all claims against Police Officer Otilia Guevara, Brandon Lamboy (the EMT), and Lamboy's employer, Senior Care Medical Services. *See* ECF Nos. 50, 54. In his pre-motion letter, plaintiff additionally withdrew all claims against the City of New York. Pl.'s Pre-Mot. Letter 1, ECF No. 56. In the same letter, plaintiff withdrew his claim for assault and battery against Officer Rivera, *id.*, and in briefing on this motion, plaintiff withdrew his claim for excessive force against Officer Rivera, Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. 7, ECF No. 71.Therefore, the only remaining defendant in this action is Officer Rivera, and the remaining claims against him are: (1) § 1983 failure to intervene and (2) state law negligence.

Officer Rivera brings this motion for summary judgment, seeking to dismiss all claims.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "can affect the outcome under the applicable substantive law." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). A genuine dispute is one that can "reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In performing this analysis, I must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "If, in this generous light, a material issue is found to exist, summary judgment is improper, and the case must proceed to trial." *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2d Cir. 1999) (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985)).

The moving party may demonstrate that there is no genuine dispute "by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223–24 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If this burden is met, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998). "Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact." *Bacchus Assocs. v. Hartford Fire Ins. Co.*, 766 F. Supp. 104, 108 (S.D.N.Y. 1991). "The nonmoving party cannot defeat summary judgment by 'simply show[ing] that there is some metaphysical doubt as to the material facts,' or by a factual argument based on 'conjecture or surmise.'" *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (alteration in original) (first quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), then quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)). If "no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment must be granted." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

## DISCUSSION

Defendants moved for summary judgment on both of plaintiff's remaining claims. Because I conclude that there are genuine disputes of material facts concerning each of the claims, I deny the motion in its entirety.

## I.    Failure to Intervene

Plaintiff alleges that Officer Rivera violated his constitutional rights by failing to intervene when Mr. Lamboy assaulted him. Officer Rivera responds that he had no constitutional duty to intervene in an assault by somebody other than a fellow police officer. But, as described below, a

police officer does have an obligation to intervene in certain circumstances where a person in his custody is at substantial risk of harm. Officer Rivera also argues that he had no opportunity to intervene. On summary judgment, drawing all reasonable inferences in favor of the plaintiff, I find that there are genuine disputes of fact as to whether he had such an opportunity.

A. Affirmative Duty to Intervene

Defendant argues that there is no way plaintiff could prevail on his failure to intervene claim because he was assaulted by a private citizen, not by a law enforcement officer. *See* Def.'s Mem. of Law in Supp. of Def.'s Mot. for Summ. J. 7, [ECF #] ("Def.'s Br."). Defendant asserts that law enforcement officers have an affirmative duty to intervene to protect citizens *only* in the case of preventable harm caused by other law enforcement officers. *See id.* Defendant is correct that law enforcement officers do have such a duty, *see, e.g.*, *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994), but defendant is incorrect in asserting this is the only type of failure to intervene claim actionable under § 1983. The fact that the assailant in this case was not a law enforcement officer is not the end of the inquiry, as there may be other reasons why a police officer would have a duty to intervene.

While there is no general constitutional right to be protected from private criminal activity, "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 198 (1989). A "special relationship" arises when an individual is involuntarily taken into government custody. *Id.* at 198–99 (providing examples of affirmative duties owed to prison inmates and involuntarily committed mental patients by nature of special relationship). "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his

safety and general well-being." *Matican v. City of New York*, 524 F.3d 151, 156 (2d Cir. 2008) (quoting *DeShaney*, 489 U.S. at 199–200).

"Special relationship" affirmative duty claims arise most often in the case of prison inmates who either are assaulted by another inmate or who do not receive adequate medical treatment. Under such circumstances, government actors may not display "deliberate indifference" to a "substantial risk of serious harm." *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 829 (1994); *Rosen v. City of New York*, 667 F. Supp. 2d 355, 359 (S.D.N.Y. 2009); *Baker v. Tarascio*, No. 3:05–CV–548 (RNC), 2009 WL 581608, at *2 (D. Conn. Mar. 6, 2009); *Williams v. Russo*, No. 01–CV–6401, 2009 WL 185758, at *4 (W.D.N.Y. Jan. 26, 2009)*. Deliberate indifference claims may be analyzed under the Eighth Amendment, for persons in prison, or under the Due Process Clause of the Fourteen Amendment, for persons in pre-trial detention. *See Rosen*, 667 F. Supp. 2d at 359 n.4 ("Because a pre-trial detainee's constitutional rights are at least as great as those of a prisoner, the Due Process Clause protections afforded to [a pre-trial detainee] are coextensive with those afforded by the Eighth Amendment."). Although the incident alleged by Mr. Rembert may be "factually completely different than those scenarios," Def.'s Reply 3, the same legal standard applies because Mr. Rembert was in state custody, subject to an involuntary deprivation of liberty, *see Urrutia v. Harrisburg Cty. Police Dep't*, 91 F.3d 451, 456 (3d Cir. 1996) ("Deliberate indifference means that an official acted or failed to act despite his knowledge of a substantial risk of serious harm. . . . We believe that these principles apply to attacks on persons in custody, whether or not by another inmate[.]") (citations omitted); *see also Davis v. Brady*, 143 F.3d 1021, 1027 (6th Cir. 1998) ("[T]he taking of [plaintiff] into [police] custody triggered the defendant officers' duty to protect[.]").

Courts have applied the deliberate indifference analysis to officers' failure to intervene in an assault on an arrestee by a person other than a law enforcement officer or an inmate. In *Urrutia*, the United States Court of Appeals for the Third Circuit found a "nonfrivolous claim of deliberate indifference" where "the police, after handcuffing [plaintiff], stood by and watched while another individual stabbed him." 91 F.3d at 453, 456. In *Abney v. City of Philadelphia*, the U.S. District Court for the Eastern District of Pennsylvania applied the deliberate indifference analysis where plaintiff was arrested, handcuffed, and allegedly injured by a crowd of private citizens surrounding him. No. CIV A 96–08111, 1999 WL 360202, at *3 (E.D. Pa. May 26, 1999). The same analysis guides the police officer's duty to the arrestee as would the correctional officer's duty in the case of a fight between inmates: did the officer show deliberate indifference to a substantial risk of harm?

Defendant's apparent position is that a police officer may arrest somebody, handcuff and shackle the arrestee, and then stand by and watch as a third party assaults the arrestee, as long as the assailant is not another police officer (or perhaps a prison inmate). The defendant's interpretation of the law provides no limiting principle: the assault could be unlimited in time and the officer could have an easy opportunity to intervene, and he would still have no duty to do so. This is not the law. Police officers have affirmative duties to people in their custody.

B. Deliberate Indifference

Having established that Officer Rivera did have an affirmative duty to not display deliberate indifference to a substantial risk of harm to a person in his custody, I look next to whether he acted in accordance with that duty. "An officer displays deliberate indifference when he has adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate without risk to himself, yet fails to intervene." *Baker*, 2009 WL 581608, at *4 (citing

*Stubbs v. Dudley*, 849 F.2d 83, 86–87 (2d Cir.1988)). The test incorporates both an objective and subjective element: the harm must be "sufficiently serious," and the defendant must have "acted with a sufficiently culpable state of mind." *Pagan v. Cty. of Orange*, No. 99 Civ. 12319(CM), 2001 WL 32785, at *2 (S.D.N.Y. Jan. 4, 2001) In *Williams*, the court formulated a four-part test in assessing whether an officer violated this duty. 2009 WL 185758, at *4. Specifically, for the claim to succeed, it must be determined that: (1) the officer "observed or had reason to know that Plaintiff was [i]nvolved in a physical altercation with another inmate";[3] (2) the officer "had a reasonable opportunity to intervene to prevent the attack from continuing"; (3) the officer was "deliberately indifferent to a substantial risk of harm to plaintiff"; and (4) the officer's failure to intervene "caused Plaintiff some harm." 2009 WL 185758, at *4.

The record in this case presents genuine disputes of material fact as to all four elements of the *Russo* test. Based on the conflicting evidence submitted by the parties, I cannot determine whether Officer Rivera observed or had reason to know of Mr. Lamboy's alleged assault on Mr. Rembert, whether he had a reasonable opportunity to intervene, whether he was deliberately indifferent to a substantial risk of harm, or whether the lack of intervention was a cause of Mr. Rembert's harm. The evidence is conflicting as to whether the assault occurred, if so, its duration, and whether Officer Rivera was likely to have been aware of it. Without resolution of these facts, I cannot conclude as a matter of law that Officer Rivera did not display deliberate indifference in his failure to intervene.

---

[3] The language of an altercation "with another inmate" is descriptive of the circumstances at issue in *Williams*. 2009 WL 185758, at *4. This test is equally applicable in analogous circumstances involving deliberate indifference to assaults by non-inmates.

The conflicting evidence in this case includes: Mr. Rembert's testimony at the 50-H hearing[4] that Mr. Lamboy punched him fifteen times in view of Officer Rivera, Rembert 50-H Tr. 23:15–19, 34:8–11; Mr. Rembert's testimony at his deposition that Mr. Lamboy quickly punched him once and kneed him once while Officer Rivera was nearby, Rembert Dep. 80:15–83:25; Officer Rivera's testimony at his deposition that he did not see Mr. Lamboy assault Mr. Rembert, Rivera Dep. 85:3–19; and Mr. Lamboy's deposition testimony that he "placed [Mr. Rembert] on the stretcher" without mentioning an assault, Lamboy Tr. 90:3–24.

Officer Rivera, in essence, asks that I make a credibility determination supporting the conclusion that if an assault did occur, it was too brief to allow him to intervene. *See* Def.'s Reply 6. Defendant relies only on Mr. Rembert's deposition, ignoring the conflicting evidence from his 50-h testimony. *See id.* Defendant is correct that if the assault consisted of two quick strikes, as Mr. Rembert described in his deposition, Officer Rivera would not have had a reasonable opportunity to intervene, and Mr. Rembert's claim would fail. *See id.* (citing *Sash v. United States*, 674 F. Supp. 2d 531, 545 (S.D.N.Y. 2009); *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988); *Corley v. Shahid*, 89 F. Supp. 3d 518, 523 (E.D.N.Y. 2015)). But defendant's argument ignores conflicting testimony from Mr. Rembert's 50-h hearing, where he stated that Mr. Lamboy hit him fifteen times. Rembert 50-H Tr. 23:15–19. This account is more consistent with a

---

[4] A "50-h hearing" is an examination provided for under New York General Municipal Law § 50-h. See N.Y. Gen. Mun. Law § 50-h(1) (McKinney 2019) ("Wherever a notice of claim is filed against a . . . city . . . the . . . city . . . shall have the right to demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made, which examination shall be upon oral questions unless the parties otherwise stipulate . . . ."). "A plaintiff's testimony in a 50–h hearing may be considered by the Court on a motion for summary judgment." *Harrell v. Cty. of Nassau*, No. 10–CV–5894 (MKB), 2013 WL 5439137, at *1 n.1 (E.D.N.Y. Sept. 27, 2013) (citing *Codling v. City of New York*, 68 F. App'x 227, 229 (2d Cir. 2003); *Decker v. City of New York*, No. 13 Civ. 0308(DLC), 2013 WL 4528531, at *2–*3 (S.D.N.Y. Aug. 27, 2013); *Hall v. Cty. of Saratoga*, No. 1:10–CV–1120 (NAM /CFH), 2013 WL 838284, at *1, *7 (N.D.N.Y. Mar. 6, 2013)).

prolonged assault that could provide an opportunity for Officer Rivera to intervene. A jury could credit the 50-h testimony, rather than the deposition testimony. *See, e.g.*, *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 364 (2d Cir. 2011) (denying summary judgment where plaintiff's testimony was inconsistent).

Because Officer Rivera did have an affirmative duty to Mr. Rembert, and there is a genuine factual dispute as to whether he violated this duty, I deny Officer Rivera's motion for summary judgment.

## II. Negligence

Mr. Rembert also brings a state common law negligence claim, alleging that Officer Rivera was negligent in allowing him to be assaulted. The elements of a negligence claim are as follows: "(1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the defendant's breach was a proximate cause of the plaintiff's injuries; and (4) the plaintiff was damaged." *Breitkopf v. Gentile*, 41 F. Supp. 3d 220, 271 (E.D.N.Y. 2014). There are genuine disputes of fact that prevent from me concluding that Mr. Rembert would be unable to prove these elements.

First, as above, Officer Rivera did owe a duty of care because of his special relationship to a person in involuntary state custody, and under some circumstances, that duty would include an affirmative duty to act. "Having assumed physical custody of inmates, who cannot protect and defend themselves in the same way as those at liberty can, the State owes a duty of care to safeguard inmates . . . ." *Sanchez v. State of New York*, 784 N.E.2d 675, 678 (N.Y. 2002).

Defendant takes the position that a police officer has no duty to protect a person in his custody from an attack by a third party, as such an action is unforeseeable. Def.'s Reply 7–8. But assuming the truth of Mr. Rembert's 50-h testimony, the harm to Mr. Rembert certainly became

foreseeable when Officer Rivera saw that an EMT was repeatedly assaulting him. If the assault did not occur, or if Officer Rivera did not witness it, or if it happened too quickly for him to intervene, there would be no duty or breach. But I cannot conclude at this time that Officer Rivera did not have a duty of care, or that he did not breach such a duty.

Defendant also argues that there is no showing of proximate cause. *Id.* at 8–9. But the same factual disputes preclude me from finding an absence of proximate cause. In the version of events conveyed by Mr. Rembert at his 50-h hearing, Officer Rivera's failure to intervene may have been a proximate cause of his injury.

Finally, defendant argues that "since plaintiff is asserting an excessive force claim against Officer Rivera premised on his alleged intentional conduct, a negligence claim with respect to the same conduct cannot lie and must fail." Def.'s Br. 9 (citing *Busch v. City of New York*, No. 00 CV 05211 (SJ), 2003 WL 22171896, at *21 (E.D.N.Y Sept. 30, 2003); *Dineen v. Stramka,* 228 F. Supp. 2d 447, 454 (S.D.N.Y. 2002)). But plaintiff is no longer bringing a claim of intentional conduct, having voluntarily withdrawn his excessive force and assault and battery claims.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is denied.


SO ORDERED.


Date:   November 5, 2019                                    ____/s/_____

   Brooklyn, New York                              Allyne R. Ross